**Barbara FIKE, Individually and on behalf of all others similarly situated, Plaintiff,**

v.

**GOLD KIST, INC.; Farmers Mutual Exchange of Russellville, Alabama, Inc., Defendants.**

**Doris L. K. PRINCE, Plaintiff,**

v.

**GOLD KIST, INC.; Farmers Mutual Exchange of Russellville, Alabama, Inc., Defendants.**

**Civ. A. Nos. 80–G–0545–NW, 80–G–0546–NW.**

United States District Court, N. D. Alabama, S. D.

Feb. 27, 1981.

Michael L. Weathers, Patterson & Weathers, Florence, Ala., for plaintiff.

William F. Gardner and William K. Thomas, Cabaniss, Johnston, Gardner, Dumas & O'Neal, Birmingham, Ala., for defendants.

## MEMORANDUM OPINION

GUIN, District Judge.

These actions are before the court on defendants' motions to dismiss based on lack of subject matter jurisdiction. The cases have been consolidated because common questions of fact and law predominate. For the purposes of the motions to dismiss, those common questions are dispositive of both cases.

These actions were brought under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e, *et seq.* (hereinafter "Title VII"), and 42 U.S.C. § 1983, alleging that plaintiffs' employment was terminated because of pregnancy. Both actions named as defendants Gold Kist, Inc. (hereinafter "Gold Kist") and Farmers Mutual Exchange of Russellville, Alabama, Inc. (hereinafter "Farmers Mutual").

The grounds of the motions to dismiss are as follows: First, there is no subject matter jurisdiction as to Farmers Mutual because it does not meet the statutory requirement of 15 or more employees for each working day in each of 20 weeks. Second, Farmers Mutual and Gold Kist cannot be consolidated as a single employer. Third, there is no subject matter jurisdiction with respect to plaintiff Fike's complaint against Gold Kist for the additional reason that she did not name Gold Kist in the charge she filed with the Equal Employment Opportunity Commission (hereinafter "EEOC"). Fourth, neither complaint alleges the "state action" necessary to state a cause of action under 42 U.S.C. § 1983.

The parties are in agreement that the affidavits, interrogatories and answers thereto, requests for admissions and responses thereto, and many hundreds of pages of deposition testimony taken to date are sufficient to enable the court to determine all factual issues. The court is of the opinion that the following findings of fact compel dismissal, to-wit:

1. With the exception of one week during 1978, Farmers Mutual has never em-

ployed 15 or more employees. Affidavit of Bobby S. Malone at 7–9.

2. Farmers Mutual and Gold Kist are separate corporate legal entities. Farmers Mutual is a cooperative association organized under Alabama law. Malone Affidavit at 1. Gold Kist is a corporation organized under the Georgia Cooperative Marketing Act.[1] Affidavit of James M. Dannielly, Jr. at 1.

3. There is no common ownership between Farmers Mutual and Gold Kist, nor are there any common directors, officers, or employees. Malone Affidavit at 1–3.

4. Farmers Mutual and Gold Kist maintain separate bank accounts, separate operating and financial statements, and separate telephone listings; they file separate tax returns and are separately licensed or permitted pursuant to the various laws governing operations of their businesses. Malone Affidavit at 607, 11, 16–17.

5. Farmers Mutual is located in Russellville, Alabama, where plaintiffs were employed. The facility consists of a farm supply store and grain receiving facility. The property is owned by Farmers Mutual. Gold Kist owns no interest in it. The farm supply facility was purchased by Farmers Mutual from Gold Kist in 1977, and the grain receiving facility was constructed by Farmers Mutual in the same year. Malone Affidavit at 1. Gold Kist has no employees at the Farmers Mutual location. Affidavit of James Gaston at 6.

6. Employees at Farmers Mutual are interviewed and hired by its general manager. Malone Affidavit at 4. Employees are evaluated and their wage rates set by the Farmers Mutual general manager, who was elected by the Farmers Mutual board of directors at its first meeting. Malone Affidavit at 4–5.

7. Farmers Mutual operates with its own funds raised from investments made by its members. There is no commingling of funds between Farmers Mutual and Gold

Kist, and Gold Kist receives no portion of any profit made from Farmers Mutual's operations. Malone Affidavit at 607. Farmers Mutual has never borrowed funds from Gold Kist. Malone Deposition at 236.

8. Farmers Mutual employees work under the supervision of its general manager, and no Gold Kist employee has any supervisory authority over any Farmers Mutual employee. Job assignments and promotions are made exclusively by the general manager without consultation with anyone from Gold Kist. Malone Affidavit at 4–6.

9. The general manager determines the hours of operation, number of employees, products sold, and prices charged. Malone Affidavit at 6, 11–12.

10. Farmers Mutual and Gold Kist were parties to a Cooperative Service Agreement under which Gold Kist undertook to provide certain accounting and related services to Farmers Mutual. This relationship is fully described at pages 9–14 of Mr. Malone's Affidavit. By way of summary, the services provided included bookkeeping and preparation of monthly financial statements, preparation of patron statements, and preparation of tax returns. In connection with these services, Gold Kist prepared and issued payroll checks to the four to six employees on Farmers Mutual's salaried payroll. The full cost of these salaries, including all related taxes, was then billed directly to and paid by Farmers Mutual. The majority of Farmers Mutual employees were paid on an hourly basis and these employees were paid directly by Farmers Mutual by checks prepared and issued for Farmers Mutual by Ms. Fike or, in her absence, by Ms. Prince. Also in conjunction with these services, Farmers Mutual obtained through Gold Kist group insurance and pension benefits. The full cost of these benefits was invoiced by Gold Kist directly to Farmers Mutual. Malone Affidavit at 10–13.

11. The plaintiffs in this lawsuit refer to being employed by "Farmers Mutual-Gold

---

1. Plaintiffs apparently do not question the separate corporate existence of Farmers Mutual and Gold Kist in that the complaint itself alleges that both entities are corporations and that Gold Kist is a foreign corporation.

Kist," but before they came to court, they referred to their employer as Farmers Mutual. Thus, in applying for unemployment compensation, both plaintiffs listed Farmers Mutual as their employer. Exhibits "1–A" and "2–A" to Deposition of Betty Smith. Likewise, Ms. Fike listed Farmers Mutual, not Gold Kist, as her employer on insurance claim forms. Exhibit "20–A" to Malone Affidavit. Similarly, Ms. Prince listed Farmers Mutual as her employer on her tax returns (see Exhibit "1" to the continued Prince Deposition), and Ms. Fike listed Farmers Mutual as employer in filling out bonding applications for Ms. Prince and other Farmers Mutual employees. Exhibit 34 to Malone Affidavit.

12. The charges filed by both plaintiffs with the EEOC were dismissed for lack of jurisdiction by EEOC on the basis of the determination that Farmers Mutual did not have 15 or more employees and that Farmers Mutual and Gold Kist were separate. Fike Deposition at 205; Exhibit "B" to Fike Complaint and Exhibit "B" to Prince Complaint.

■ It is clear that no action has been stated under 42 U.S.C. § 1983, nor have any facts been shown the court which would establish "state action." Consequently, the § 1983 aspect of the complaint is clearly to be dismissed. It. has not, in fact, seriously been asserted.

■ As to the Title VII aspect of the claim, the plaintiff bears the burden of proving that jurisdiction in fact exists. *EEOC v. Southwestern Group Financial, Inc.*, 21 FEP Cases 38, 21 EPD ¶ 30,361 (S.D.Tex.1979).[2] Thus, plaintiffs here must establish (1) that Farmers Mutual was an "employer" as that term is defined by Title VII, or (2) that the separate corporate existence of Farmers Mutual and Gold Kist should be disregarded so as to consider them as a single employer. The court will not reach the issue whether Gold Kist was named in the charges filed with the EEOC,

or otherwise came within any exception to the rule that normally requires the filing of a charge against a defendant, since the court reaches the conclusion that it has no jurisdiction as to either defendant in any event. The court's discussion, therefore, will be limited to the first and second grounds of the motions.

■ The facts clearly show that Farmers Mutual did not employ 15 or more employees for each working day in 20 or more weeks and thus did not meet the Title VII definition of an employer. Plaintiffs, in fact, appear to concede this fact, and place their reliance on the theory that the separate corporate existence of Farmers Mutual and Gold Kist was a sham and that the court should treat the two corporations as a single employer for purposes of Title VII. Plaintiffs also argue that Gold Kist can be reached as an employer on the theory that the acts complained of were done by Farmers Mutual as the agent of Gold Kist.

This is the so-called "single employer theory." The theory is usually put forward in a case involving a parent corporation and its subsidiary. These two corporations do not stand in that relationship. In any event, the cases have held that two corporations can be treated as a single entity for the purpose of determining subject matter jurisdiction only when the facts show that the separate existence of the two corporations was a sham. *Mas Marques v. Digital Equipment Corp.*, 24 FEP 1286 (1st Cir. 1980); *Hassell v. Harmon Foods, Inc.*, 336 F.Supp. 432 (W.D.Tenn.1971), *aff'd*, 454 F.2d 199 (6th Cir. 1972); *Lottice v. Ingersoll-Rand Co.*, 14 FEP 708, 709 (N.D.Cal. 1977); *Armbruster v. Quinn*, 23 FEP 1801 (E.D.Mich.1980).

In *Armbruster* the court emphasized as the most important factor in its analysis "centralized control of labor relations." It is clear in this case that Gold Kist had no role in hiring or firing Farmers Mutual

2. Counsel for plaintiffs urge the court to consider this case in support of their position. The case at hand, however, is not comparable. The corporations in the aforementioned case have a parent-subsidiary relationship, possess interlocking directorates, and have common elements of managerial control.

employees or in fixing its employment practices. Gold Kist owns no interest at all in Farmers Mutual. The two corporations are not in a parent-subsidiary relationship. There can be no serious contention that either corporation could be held liable for the debts of the other.

Courts have also looked to interchange of employees and standards which have been used by the National Labor Relations Board (hereinafter "NLRB"). *Williams v. New Orleans Steamship Assoc.*, 341 F.Supp. 613 (E.D.La.1972).

The facts in the present case show no interchange of employees. The standards applied by the National Labor Relations Board, as related in *Radio & T.V. Local 1264 v. Broadcast Service of Mobile*, 380 U.S. 255, at 256, 85 S.Ct. 876, at 877, 13 L.Ed.2d 789 at 791, are "interrelation of operations, common management, centralized control of labor relations and common ownership." The NLRB applies these standards to find a single integrated enterprise "only when it appears that they are highly integrated with respect to ownership and operations." *International Union of Operating Engineers, Local 428*, 169 NLRB 184 (1968); *Riverside Motor Inn*, 199 NLRB 1033 (1972). The following analysis of the four NLRB criteria clearly demonstrates that facts do not exist to support a finding that these two defendants "are highly integrated with respect to ownership and operations."

1. *No interrelation of operations*: The NLRB has noted that this factor, along with the degree to which control of labor relations is centralized, are the most significant of the four considerations. *Joint Council of Teamsters No. 42*, 225 NLRB 209 (1976).

The factors which bear on the interrelation of operations test are illustrated by the Board's decision in *Western Union Corp.*, 224 NLRB 274 (1976), *aff'd*, 571 F.2d 665 (D.C.Cir.1978), which held that Western Union and five other related companies should not be treated as a single employer. Addressing the issue of interrelated operations, it was reasoned as follows:

Among the indicia of interrelatedness not shown to be present herein are combined accounting records, bank accounts, lines of credit, payroll preparation, switchboards, telephone numbers, or offices. In such circumstances, we do not find that the mutually convenient arrangements existing between Western Union and the various other Respondents detract from their corporate independence.

224 NLRB at 277.

Similarly, in *Joint Council of Teamsters No. 42*, 225 NLRB 209 (1976), it was noted in rejecting application of the single employer theory that "[t]he operations of the companies were distinctly different. There was no significant interchange of employees, high-level supervisors, or equipment."

Likewise, in *International Union of Operating Engineers*, 169 NLRB 184 (1968), it was held that the existence of common incorporators, officers, directors, and stockholders, as well as the fact that the two businesses were located in the same building, shared a bookkeeping staff, shared equipment and the occasional interchange of employees, constituted "relatively insubstantial indicia of a common relationship." More significant was the fact that payrolls, telephones and billings were separate, each corporation paid its proportionate share of common clerical help and neither corporation had control over the hiring and firing of the other's employees.

None of the factors significant to a finding of interrelatedness of operations is present here. In these cases, the facilities and equipment used in the Farmers Mutual business have been owned by Farmers Mutual since 1977 and were leased prior to the 1977 sale. Farmers Mutual and Gold Kist have no common offices, employees, or telephones. Farmers Mutual and Gold Kist have separate accounting records and financial statements, and Farmers Mutual accounts are billed separately. They file separate corporate tax returns. Although Gold Kist prepared the Farmers Mutual salaried payroll, Gold Kist was fully reimbursed by Farmers Mutual for this and all

other services provided by Gold Kist. The hourly payroll was prepared by the plaintiffs at the Farmers Mutual facility. There are no Gold Kist employees who regularly work at Farmers Mutual and there is no interchange of employees between Farmers Mutual and Gold Kist.

As these facts amply demonstrate, there is absolutely no basis for concluding that the operations of these two separate corporate entities are so interrelated as to permit their being treated as a single employer. There were contractual relations between the two corporations as fully described in Mr. Malone's affidavit. However, these were arms-length transactions between two separately organized legal entities, Gold Kist was fully reimbursed for all services it provided and, as the Board in *Western Union* concluded, these "mutually convenient" arrangements ... [do not] detract from their corporate independence."

2. *No Common Management*: Little time need be spent on the second test used in determining single employer status. Cases treating two separate corporate entities as a single employer have placed heavy emphasis on the existence of common directors and officers. *Baker v. Stuart Broadcasting Co.*, 505 F.2d 181 (8th Cir. 1977); *Ratcliffe v. Insurance Company of North America*, 482 F.Supp. 759 (E.D.Pa. 1980); *Dempsey v. Shoe Show, Inc.*, 19 FEP 1557 (M.D.N.C.1978); *McLendon v. Continental Trailways, Inc.*, 18 FEP 1698 (N.D. Tex.1978); *Hill v. Singing Hills Funeral Home*, 77 F.R.D. 746, 748–49 (N.D.Texas 1978).

Here, in contrast, it is undisputed that Farmers Mutual and Gold Kist have separate boards of directors and separate corporate officers and that there are no common directors or officers. In *Western Union Corp.*, 224 NLRB 274 (1976), aff'd, 571 F.2d 665 (D.C.Cir.1978), there was some overlap of officials between Western Union and its five subsidiaries, but the Board nevertheless refused to find common management.

3. *No Centralized Control of Labor Relations*: Of the four criteria applied in determining single-employer status, the most critical is the degree to which control of labor relations is centralized. *EEOC v. Cuzzens of Georgia*, 15 FEP 1807 (N.D.Ga. 1977), *rev'd on other grounds*, 608 F.2d 1062 (5th Cir. 1979); *Western Union Corp.*, 224 NLRB 274 (1976), aff'd, 571 F.2d 665 (D.C. Cir.1978); *Woodford v. Kinney Shoe Corp.*, 369 F.Supp. 911 (N.D.Ga.1973); *Ratcliffe v. Insurance Company of North America*, 482 F.Supp. 759 (E.D.Pa.1980); *EEOC v. Sage Realty Co.*, 23 EPD ¶ 31,046 (S.D.N.Y.1980); *McLendon v. Continental Trailways, Inc.*, 18 FEP 1698 (N.D.Tex.1978). Here it is undisputed that all Farmers Mutual employees were hired by its general manager, without any involvement by anyone with Gold Kist. There is evidence that there was a contractual agreement which gave Gold Kist certain rights of control, which were not exercised. It is well settled that the "control" required to meet the test of centralized control of labor relations is not potential control, but rather actual and active control of day-to-day labor practices. The evidence in this case does not show actual and active control of day-to-day labor practices.

Even when there is a considerable amount of control present, if it does not extend into the area of personnel, the control is insufficient to establish that two corporations should be treated as one. *Carter v. Shop Rite Foods, Inc.*, 470 F.Supp. 1150 (N.D.Tex.1979).

The mere provision of insurance and pension benefits, or other benefit programs, does not establish central control of labor relations. *Los Angeles Newspaper Guild, Local 69*, 185 NLRB 303 (1970), aff'd, 443 F.2d 1173 (9th Cir. 1971).

4. *No Common Ownership*: There is no common ownership. Gold Kist owns no interest in Farmers Mutual. Furthermore, there is no evidence whatever that Gold Kist has ever exercised any financial control over Farmers Mutual. The undisputed evidence is that all Farmers Mutual revenues were placed in an account in the name of Farmers Mutual, from which Farmers Mutual's operating expenses were paid. Farmers Mutual did not borrow funds from Gold Kist, and Gold Kist held no mortgage

or lien on the assets of Farmers Mutual. There were provisions in the Cooperative Service Agreement which amounted to prospective control, but these were not exercised and, therefore, never amounted to any degree of actual control. Farmers Mutual's general manager did not secure any approval to extend credit, had sole discretion in determining who received a bonus, was not required to and did not consult with Gold Kist with respect to purchases from other sources. Actual control has simply not been established.

Consequently, the court finds as matters of fact that the single-employer doctrine does not apply; that the separate existence of the two defendant corporations was not a sham; and that the plaintiffs have totally failed to establish the facts necessary to support their theory that these defendants should be treated as a single employer.

■ The only remaining theory open to the plaintiffs to establish the jurisdiction of this court is that of agency, based on Title VII's definition of the term "employer" as a "person engaged in an industry affecting commerce who has 15 or more employees—and any agent of such person." It is settled that only an agency relationship which establishes an "employment nexus" will suffice. In other words, one of the corporations must have been the agent of the other with respect to employment practices. *Ingber v. Ramada Inns, Inc.*, 20 EPD ¶ 30,181 (N.D.Ga.1979); *Hairston v. McLean Trucking Co.*, 62 F.R.D. 642 (M.D.N.C.1973), *vacated on other grounds*, 520 F.2d 226 (4th Cir. 1975).

Here there is a total lack of evidence of an employment nexus between the defendant corporations. It is undisputed that Gold Kist was not a party to any of the employment practices which plaintiffs challenge in these cases.

For the foregoing reasons, it is patent that neither plaintiff can establish on this record facts which will support the jurisdiction of this court in either of the two cases against either of the two defendants. They are therefore to be dismissed with prejudice, and an order to this effect will be entered herewith.

The questions of jurisdiction having been totally decided by these considerations, it is unnecessary for the court to take up the question whether the failure of plaintiff Fike to list Gold Kist in the charge she filed with EEOC is fatal to her right to sue Gold Kist. The resolution of that question not being necessary to the court's decision, the court does not reach the question.