Troy NATION, Harry Walton, and Shelvie L. Wesley

v.

WINN–DIXIE STORES, INC. and Winn-Dixie Atlanta, Inc.

Civ. No. C80–1468.

United States District Court, N.D. Georgia, Atlanta Division.

Sept. 23, 1983.

William Hazleton, Anglin & Sweet, P.C., Atlanta, Ga., Bensonetta Tipton Lane, College Park, Ga., for plaintiffs.

John W. Collier, Ogletree, Deakins, Nash, Smoak, Stewart & Edwards, Atlanta, Ga., Kenneth G. Mall, Jacksonville, Fla., Donald A. Cockrill, Greenville, S.C., for defendants.

## ORDER

ORINDA D. EVANS, District Judge.

This case is before the Court on Defendant's Motion to Reconsider a portion of the Court's Order of July 1, 1983, 567 F.Supp. 997, in which it was held that Plaintiff Shelvie L. Wesley was discriminatorily denied certain training on account of his race.

In the Memorandum filed in support of the Motion to Reconsider, Defendant cites *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973) and *Texas Department of Community Affairs v. Burdine,* 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1980). Defendant contends that the Court failed to employ the three-part analysis of *McDonnell Douglas,* as further refined by *Burdine,* and that this failure caused the Court to reach the wrong conclusion in the referenced part of the July 1, 1983 Order.

*McDonnell Douglas, Burdine* and progeny allocate respective burdens of production between plaintiff and defendant in a Title VII case. Such allocation sharpens the court's focus on the elusive element of discriminatory intent and may entitle one side to summary disposition of the case where the other fails in its production burden.[1] Where both sides meet their respective burdens of production, the task remaining for the court is to determine whether the plaintiff has carried the burden of persuasion. Since *Burdine,* it has been quite clear that the burden of persuasion falls entirely on the plaintiff.

The analysis employed by the Court in its July 1 Order did not specifically set forth

---

1. Where plaintiff makes out a prima facie case and defendant defaults, plaintiff is aided by a presumption of unlawful discrimination.

the various steps of the *McDonnell Douglas/Burdine* analysis. The Court's July 1 Order did not treat this case as one where Defendant failed in its burden of production.[2] Rather, the Court determined that, taking the evidence as a whole, Plaintiff had carried the burden of persuasion on the factual issue of discriminatory intent.[3]

Having reconsidered pursuant to Defendant's request, however, the Court believes explicit application of the *McDonnell Douglas/Burdine* criteria would promote clarity. That analysis will now be undertaken.

Plaintiff Wesley made out a prima facie case. He is black; he was eligible for the training he desired; he was rejected in favor of Mr. Collins, a white employee; he was older and had more prior training, experience, and seniority than did Mr. Collins.

Defendant cited as reasons for preferring Mr. Collins over Mr. Wesley Mr. Collins' punctuality, good attitude, desire, ability to get along with others, and pride in his work. *See* p. 15, July 1, 1983 Order. Defendant contended that Mr. Wesley had had problems with punctuality. None of Defendant's witnesses stated whether or not Mr. Wesley lacked a good attitude, lacked desire, lacked ability to get along with others, or failed to take pride in his work.

Defendant's statement that Mr. Collins had a good attitude, took pride in his work, etc. does not meet *Burdine's* requirement that Defendant articulate a "clear and reasonably specific" nondiscriminatory reason for its personnel decision.

It is not clear or reasonably specific. First, it is not a comparative statement; the Court is left to guess as to how Defendant regarded Mr. Wesley in each of these categories. Secondly, the meaning of these terms is not apparent; their meaning peculiarly depends upon the undisclosed personal

---

**2.** Defendant's production burden post-*Burdine* is merely to articulate, through testimony, a "clear and reasonably specific" lawful (*i.e.,* nondiscriminatory) reason for plaintiff's rejection. *Burdine,* 450 U.S. at 258, 101 S.Ct. at 1096. Such articulation must "... frame the factual issue with sufficient clarity so that the plaintiff will have a full and fair opportunity to demonstrate pretext." *Burdine,* at 255, 101 S.Ct. at 1094.

**3.** Defendant objects to the Court's reliance on employment statistics showing an underrepresentation of black employees beginning in 1979 at the store where Mr. Wesley and Mr. Collins worked (Store 1877). In its July 1, 1983 Order, the Court found that this statistical evidence supported an inference of intentional race discrimination by the territorial supervisor in charge of the store. Defendant points out that this store was transferred in June 1979 from one territory to another, and that statistics for the period before the transfer do not throw light on the discriminatory intent *vel non* of the territorial supervisor who chose Mr. Collins for training over Mr. Wesley. Defendant presents additional statistics (pursuant to the Court's July 26, 1983 Order and without objection by Plaintiffs) that from late June 1979 through 1980 this new supervisor, Rod Owens, hired no full-time produce or dairy/frozen food clerks at Store 1877. He did, however, hire five part-time grocery clerks. Four of the part-time hires were white; one was black. Defendant urges that these statistics do not show that Mr. Owens preferred white employees.

The evidence in the record on Rod Owens' employment practices is limited. The EEO–1 reports filed on Store 1877 for the years 1979, 1980, and 1981 show that on November 14, 1979, two blacks worked there; on May 7, 1980, one black worked there; and on June 10, 1981, three blacks worked there. These figures include full-time and part-time employees. Plaintiffs' Exhibits 128, 152, 154. Plaintiffs' evidence shows that, on June 24, 1981, Owens also supervised six other stores (Stores 1801, 1803, 1830, 1845, 1849, and 1872). All but one of these stores employed fewer black workers than would have been employed had the percentage of black workers matched the percentage of blacks in the available work force for that community. The shortfall between the actual number of black full-time and part-time employees and the projected number based on availability in the work force averaged 38% among the stores Mr. Owens supervised on that date. The shortfall at Store 1877 was 50% (three rather than six black workers). Store 1830, however, employed three black full-time workers, although there was no available black work force in the surrounding community. Plaintiffs' Exhibit 117.

Although the new evidence proffered by Defendant (and admitted by the Court) tends to dilute the statistical evidence referred to in the July 1, 1983 Order, the Court still finds that the overall record supports a mild inference of preference for hiring whites within Mr. Owens' territory, because the statistics show continuing underrepresentation of blacks among employees.

frame of reference of the particular witness.

In addition, the stated subjective reasons fail to meet the *Burdine* requirement because they are not identifiable on their face as nondiscriminatory reasons. It is well recognized that subjective criteria can be a mechanism for either intentional or unintentional discrimination. *See Rowe v. General Motors Corp.,* 457 F.2d 348, 359 (5th Cir.1972). Thus, a bald assertion that a given employee (for example) "fails to take pride in his work" cannot be assumed to be nondiscriminatory, *i.e.,* free from racial bias. Since the defense witnesses' statements of subjective reasons for choosing Mr. Collins for dairy/frozen food training instead of Mr. Wesley did not meet *Burdine's* articulation requirement, it was unnecessary (and indeed inappropriate) for the Court to give their testimony in this regard any weight.[4]

 Defendant's statement that Mr. Collins was a "punctual" employee, whereas Mr. Wesley allegedly was not, was a reasonably specific articulation which meets the requirements of *Burdine.* In the light of all the evidence at the trial, though, the Court finds that Mr. Wesley's alleged lack of punctuality was not the reason he failed to receive the dairy/frozen food training slot. There was never any entry in his personnel file of tardiness problems. The evidence indicates that although Mr. Wesley was occasionally tardy, this was not a continuing problem and occurred primarily when he first began work for Defendant, and did not own an automobile. Taking into account the statistical evidence discussed at pages 16, 17 and 19 of the July 1 Order, and the new evidence proffered by Defendant, the Court finds that the true reason Mr. Wesley did not receive such promotion was his race.

For these reasons, Defendant's motion for reconsideration is GRANTED and the Court REAFFIRMS its judgment in favor of Plaintiff Shelvie L. Wesley.

---

4. Defendant states that in *McDonnell Douglas* the Supreme Court reversed the Eighth Circuit's holding that the company's subjective reason for refusing to hire Green carried little weight in rebuttal of Green's *prima facie* case. This Court reads *McDonnell Douglas* as questioning whether the Eighth Circuit accurately described the company's reasons as subjective ones entitled to little weight. Accordingly, the Court does not find the Supreme Court's discussion of the merits of McDonnell Douglas's reasons for refusing to rehire Green to be pertinent to an evaluation of the merits of Winn-Dixie's subjective, non-comparative reasons for choosing Mr. Collins over Mr. Wesley.