**Dorothy C. BRUCE, Plaintiff,**

v.

**S & H RIGGERS AND ERECTORS, INC. and Contractors Diversified, Inc., Defendants.**

**No. 1:88–cv–2803–RHH.**

United States District Court, N.D. Georgia, Atlanta Division.

Feb. 23, 1990.

Curtis Arthur Thurston, Jr., Lela L. Smith, Lawson & Davis, Atlanta, Ga., for plaintiff.

Jesse P. Schaudies, Jr., Michael W. Lord, Troutman, Sanders, Lockerman & Ashmore, Atlanta, Ga., for defendants.

## ORDER

ROBERT H. HALL, District Judge.

Plaintiff brings this action pursuant to the Age Discrimination in Employment Act of 1967, 29 U.S.C. § 621 *et seq.*, as amended ("ADEA"), the Employee Retirement Income Security Act, 29 U.S.C. § 1001, *et seq.* ("ERISA") and O.C.G.A. § 34–1–2. Currently before the court is defendants' motion for summary judgment. For the reasons stated below, the court PARTIALLY GRANTS and PARTIALLY DENIES defendants' motion for summary judgment.

FACTS

Plaintiff Dorothy C. Bruce ("Bruce") was terminated from her employment as a bookkeeper and secretary on August 7, 1987. At the time of her termination, Mrs. Bruce was fifty-seven years old. Mrs. Bruce believed that she had been employed by S & H Riggers and Erectors, Inc. ("S & H"). On S & H stationary, Mr. Smith, President of S & H, wrote a letter of recommendation for Mrs. Bruce to prospective new employers. The letter stated that Bruce had been terminated to allow "younger family members" to begin work at S & H.

Mrs. Bruce filed an EEOC charge against S & H, claiming that S & H discharged her because of her age and sex. S & H, through its President, Mr. William J. Smith, denied that it had ever employed plaintiff. S & H contended that Mrs. Bruce had, in fact, been employed by Contractors Diversified, Inc. ("CDI").

By order dated May 5, 1989, the court granted plaintiff's motion to add CDI as a party defendant. Mr. Smith is also the President and owner of CDI. Mr. Smith is the 100% shareholder of CDI; CDI is the 100% shareholder of S & H.

After Mrs. Bruce was terminated, defendants re-hired a former employee, Ms. Mabel Zerblis, to perform plaintiff's duties. Ms. Zerblis was fifty-seven years of age at the time she was re-hired. Soon thereafter, defendants hired a Ms. Gayle Gann, who was under forty years of age. When Ms. Gann began work, Ms. Zerblis dropped down to part-time status.

Plaintiff filed her Complaint in this forum on December 13, 1988. Defendants now move for summary judgment on all three counts of the Complaint as amended by plaintiff on June 9, 1989.

## DISCUSSION

### I. *Standard of Review*

The court will grant summary judgment when "there is no genuine issue as to any material fact ... and the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). The moving party must demonstrate that the nonmoving party lacks evidence to support an essential element of her or his claim. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). The movant's burden is "discharged by showing—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." Once the movant has met this burden, the opposing party must present evidence establishing a material issue of fact. *Id.* The nonmoving party must go "beyond the pleadings" and present evidence designating "specific facts showing that there is a genuine issue for trial." *Id.* at 324, 106 S.Ct. at 2553.

While all evidence and factual inferences should be viewed in a light most favorable to the nonmoving party, *Rollins v. TechSouth, Inc.*, 833 F.2d 1525, 1529 (11th Cir. 1987); *Everett v. Napper*, 833 F.2d 1507, 1510 (11th Cir.1987), "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986) (emphasis in the original). An issue is not genuine if unsupported by evidence or created by evidence that is "merely colorable" or "not significantly probative." *Id.* at 250, 106 S.Ct. at 2511. Similarly, an act is not material unless it is identified by the controlling substantive law as an essential element of the nonmoving party's case. *Id.* at 248, 106 S.Ct. at 2510. Thus, to survive a motion for summary judgment, the nonmoving party must come forward with specific evidence of every element essential to his or her case so as to create a *genuine* issue for trial. *Celotex Corp.*, 477 U.S. at 323, 106 S.Ct. at 2552; *Rollins*, 833 F.2d at 1528.

### II. *Application*

#### A. Single Employer Theory

■ The first issue the court must address is whether Contractors Diversified, Inc. ("CDI") is an employer within the meaning of the ADEA. The ADEA describes an employer as a:

... person engaged in industry affecting commerce who has twenty or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year....

29 U.S.C. § 630(b).

Defendants maintain that plaintiff was employed solely by CDI and that CDI does not fall within the ADEA's definition of an employer. CDI employs approximately three individuals; CDI has never employed twenty employees at one time. Thus, CDI does not fall within the ADEA's express definition of employer. Nonetheless, plaintiff urges the court to view CDI and S & H

Riggers and Erectors, Inc. ("S & H") as a single employer for the purposes of the ADEA. S & H is a wholly owned subsidiary of CDI.

As a general rule, a parent company will be considered a separate corporate entity from its wholly owned subsidiary. *Baker v. Raymond International, Inc.,* 656 F.2d 173 (5th Cir. Unit A, 1981). However, where a parent company exercises such control over a subsidiary that the two corporations are essentially the same entity, a parent corporation will be considered the employer of its subsidiary's personnel. *See Woodford v. Kinney Shoe Corp.,* 369 F.Supp. 911 (N.D.Ga.1973) (Smith, C.J.).

■ To determine whether a parent and subsidiary are so interrelated that they should be considered one employer for ADEA purposes, the court applies the "integrated enterprise" test. *See McKenzie v. Davenport–Harris Funeral Home,* 834 F.2d 930 (11th Cir.1987). This test had its genesis in labor law. The National Labor Relations Board first applied the integrated enterprise test to determine whether a consolidation of separate corporate entities was warranted. The quadripartite test entails proof of the following:

(1) an interrelation of operations

(2) common management

(3) centralized control of labor relations, and

(4) common ownership or financial control.

*See Radio & Television Broadcast Technicians, Local Union 1264, International Brotherhood of Electrical Workers, AFL–CIO v. Broadcast Service of Mobile, Inc.,* 380 U.S. 255, 85 S.Ct. 876, 13 L.Ed.2d 789 (1965).

The integrated enterprise test was soon applied to Title VII litigation to determine whether an active parent corporation, supervising and controlling the operations of its subsidiary, would be considered the employer of the subsidiary's personnel for purposes of the Act. *See, e.g., Williams v.*

*New Orleans Steamship Association,* 341 F.Supp. 613, 615 (E.D.La.1972); *Baker v. Stuart Broadcasting Co.,* 560 F.2d 389 (8th Cir.1977). The integrated enterprise test is "well suited" to Title VII cases because it allows courts to read the term "employer" in a manner consistent with the purposes of the Act. *See Carter v. Shop Rite Foods, Inc.,* 470 F.Supp. 1150, 1160 (N.D.Tex.1979). The test is similarly applicable to ADEA cases. *Oscar Mayer & Company v. Evans,* 441 U.S. 750, 756, 99 S.Ct. 2066, 2071, 60 L.Ed.2d 609 (1979) (holding that interpretation of the ADEA should follow Title VII construction, given the common language and purposes of the two acts); *see also Berkowitz v. Allied Stores of Penn–Ohio, Inc.,* 541 F.Supp. 1209 (E.D.Pa.1982).

■ By applying the four prongs of the integrated enterprise test, an ADEA plaintiff may demonstrate that two superficially separate corporations are essentially a single employer. *See Nation v. Winn–Dixie Stores, Inc.,* 567 F.Supp. 997, 1010, *aff'd on reconsideration,* 570 F.Supp. 1473 (N.D.Ga.1983) (Evans, J.); *Greason v. Southeastern Railroad Associated Bureaus,* 650 F.Supp. 1, 4 (N.D.Ga.1986) (Ward, J.); *EEOC v. Upjohn Corp.,* 445 F.Supp. 635 (N.D.Ga.1977) (Murphy, J.).[1] Applying this integrated enterprise test to the facts of this case, the court finds that a genuine issue of material fact remains concerning whether CDI and S & H should be treated as a single entity.

(1) *Interrelation of Operations*

In determining whether CDI and S & H operations were substantially interrelated, the court may consider the following factors: Combined accounting records, bank accounts, lines of credit, payroll preparation, switchboards, telephone numbers, or offices. *See Fike v. Gold Kist, Inc.,* 514 F.Supp. 722, 726 (N.D.Ala.1981) *aff'd,* 664 F.2d 295 (11th Cir.1981) (quoting *Western Union Corp.,* 224 N.L.R.B. 274 (1976) *aff'd,* 571 F.2d 665 (D.C. Cir.1978).

---

1. Plaintiff bears the burden of proving that subject matter jurisdiction exists. *McKenzie,* 834 F.2d at 933.

In the case at hand, CDI and S & H shared offices. Plaintiff answered the telephone for both companies. Plaintiff was responsible for the payroll of both companies. In addition, she filed tax reports for both companies. While the fact that the same employee prepared payroll and tax forms does not of itself demonstrate that the two companies are one employer, it certainly raises an inference that of considerably interrelated operations. In addition, William J. Smith, President and Owner of S & H and CDI wrote a letter of recommendation for Mrs. Bruce stating, "[t]his letter of reference of [sic] Mrs. Dorothy Bruce is given because of her outstanding service to S & H Riggers and Erectors, Inc. these past 3½ years." Plaintiff's Exhibit 1 to the Deposition of William J. Smith. The letter goes on to discuss Mrs. Bruce's duties at S & H:

> She did all the company bookkeeping, typing, billing and posting. She was first person customers met at our front office ... Her job required that she make payroll for thirty to fifty employees on a weekly basis ... She assisted me as my personal secretary and handled typing all bids and contracts to outside general contractors.

*Id.*

Mr. Smith's own testimony reveals that, even assuming Mrs. Bruce was employed by CDI, she performed many duties for S & H *and* for Mr. Smith in his capacity as S & H President.

### (2) *Common Management and Common Ownership* [2]

William Smith is the 100% owner of CDI. CDI is the 100% shareholder of S & H. Smith is the president and CEO of both CDI and S & H. "Cases treating two separate corporate entities as a single employer have placed heavy emphasis on the existence of common directors and officers." *Fike,* 514 F.Supp. at 727. The facts of this case indicate that CDI and S & H had common ownership and management. Such facts lend credibility to plaintiff's as-

sertion that S & H and CDI operated as a single employer. As noted above, Mrs. Bruce performed considerable work for Mr. Smith in his capacity as S & H's President.

### (3) *Centralized Control of Labor Relations*

The third prong of the integrated enterprise test, the degree to which control of labor relations is centralized, is considered the most important. *Id.; Woodford,* 369 F.Supp. at 911. Here the court considers who hires, fires and has control over the day-to-day labor practices. *Woodford,* 369 F.Supp. at 911. Not much evidence is in the record on this prong of the integrated enterprise test. Evidently, however, Mr. Smith controlled the hiring and firing of CDI employees. And, in his letter of reference for Mrs. Bruce, he states that he terminated Mrs. Bruce's tenure as "Girl Friday" to S & H Riggers. *Id.* A genuine issue of material fact thus remains as to whether Smith had control over the labor forces of both CDI and S & H.

In summary, plaintiff raises several material questions of facts as to whether CDI and S & H should be deemed on employer for ADEA purposes.

### B. EEOC Filing

■ Defendants also seek summary judgment against plaintiff on the grounds that she failed to file charges against defendant CDI with the EEOC.

29 U.S.C. § 626(d) provides in pertinent part:

> No civil action may be commenced by an individual under this section until 60 days after a charge alleging unlawful discrimination has been filed with the Equal Employment Opportunity Commission. Such a charge shall be filed—
>
> (1) within 180 days after the alleged unlawful practice occurred....

Typically, a plaintiff's failure to name a defendant in an EEOC charge bars plaintiff from suing that defendant in federal court. *See Durham v. Bleckley County School*

---

**2.** The court combines prong 2 (common management) and prong 4 (common owner-ship) of the NLRB four part test into one category.

*System,* 680 F.Supp. 1555 (M.D.Ga.1988). The purpose of the EEOC filing requirement is to insure that each defendant has knowledge of the alleged violation and a chance to resolve the dispute prior to litigation. *See Koster v. Chase Manhattan Bank,* 554 F.Supp. 285, 288 (S.D.N.Y.1983). However, in certain instances noncompliance with 29 U.S.C. § 626(d) may be excused. *Id.* For example, failure to file EEOC charges against one party defendant may be excused where notice to another related party has essentially provided notice of the pendency of charges to the first party and where the two parties are substantially identified. *See, e.g., Berger v. Iron Workers Reinforced Rodmen Local 201,* 843 F.2d 1395, on rehearing, 852 F.2d 619 (D.C.Cir.1988), *cert. denied,* —— U.S. ——, 109 S.Ct. 3155, 104 L.Ed.2d 1018 (1989); *Bumpers v. International Mill Services, Inc.,* 595 F.Supp. 166, 170 (E.D. Pa.1984).

Here it is evident that CDI and S & H are substantially identified. The factors demonstrating such identification have been laid out in detail above. In addition, the court finds that the notice of pendent EEOC charges afforded Mr. Smith as President of S & H effectively provided notice to Mr. Smith as President of CDI. The court therefore will not grant defendant CDI summary judgment on the grounds that plaintiff failed to file charges against CDI before the EEOC.

## C.   Prima Facie Case

Defendants move for summary judgment against plaintiff's ADEA claim on the grounds that plaintiff has failed to put forth a prima facie case of age discrimination.

As in other cases of discrimination, an action under the ADEA is a three-step process. First, plaintiff must establish a prima facie case. *Goldstein v. Manhattan Industries, Inc.,* 758 F.2d 1435, 1443 (11th Cir.), *cert. denied,* 474 U.S. 1005, 106 S.Ct. 525, 88 L.Ed.2d 457 (1985). Plaintiff's pre-

sentation of a prima facie case raises a rebuttable inference of discrimination and shifts the burden back to the employer to articulate a legitimate nondiscriminatory reason for terminating plaintiff. *Carter v. City of Miami,* 870 F.2d 578, 584 (11th Cir.1989). Upon such a showing by defendants, the burden shifts back to plaintiff to carry the ultimate burden of proving that she was the victim of intentional age discrimination and that the reasons advanced by defendants were pretextual. *Id.*

██  At the first stage, a plaintiff can establish a prima facie case through one of three commonly accepted means: By direct evidence of discriminatory intent, by meeting the four-pronged test set out for Title VII cases in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973)[3], or through statistical proof. Here plaintiff has introduced direct evidence of discriminatory intent. Plaintiff asserts that William J. Smith informed her that the reason she was terminated was to afford younger individuals an opportunity to work in defendants' business. In a letter of recommendation for Ms. Bruce, Mr. Smith states "[h]er services were terminated because of a reorganization in my company. This had occurred as S & H has started bringing younger family members into the corporation." Plaintiff's Exhibit 1 to Smith Deposition. The letter of recommendation is a metaphorical "smoking gun." Defendants assert that the direct evidence is rebutted by the fact that the letter was merely given to assist Mrs. Bruce in her search for a new job; that its complimentary language was untrue when penned. Defendants argue that since Mr. Smith had a good motive for writing the letter the court should disregard the letter's express language. However, Mr. Smith's desire that Mrs. Bruce find another job has nothing to do with whether Smith fired her for a discriminatory reason. The letter constitute direct evidence that Smith terminated Mrs. Bruce to hire younger family member. A jury could quite reason-

---

**3.** The *McDonnell Douglas* four prong test is applicable to ADEA cases. *Reynolds v. CLP Corp.,* 812 F.2d 671, 674–75 (11th Cir.1987).

ably interpret this letter as evidence of age discrimination.

■ Even if there were no direct evidence in this case, plaintiff has made out a prima facie case of age discrimination under the *McDonnell Douglas* test. A prima facie case under the ADEA contains four requirements: (1) plaintiff must belong to the protected group consisting of employ- ees between the ages of 40 and 64; (2) her status as an employee must be adversely affected; (3) she must be replaced by some- one outside the protected group; and (4) she must be qualified for the job denied her. *Stamey v. Southern Bell Telephone & Telegraph Co.*, 859 F.2d 855, 859 (11th Cir.1988); *Carter*, 870 F.2d at 578. Defen- dants assert that plaintiff has failed to satisfy the third component of the prima facie case.

The Eleventh Circuit has eschewed re- peatedly an overly strict formulation of the four elements of the prima facie case. *Carter*, 870 F.2d at 583. Age is not a "discreet and immutable characteristic of an employee which separates the members of the protected class indelibly from mem- bers outside the protected class. Rather, age is a continuum along which the distinc- tions between employees are often subtle and relative ones." *Goldstein*, 758 F.2d at 1442. This court's inquiry therefore should be whether an ordinary person could rea- sonably infer discrimination if the facts presented by plaintiff remain unrebutted. *Id.* at 1443.

Plaintiff Bruce was fifty seven years old when she was terminated. Thus, she has satisfied the first component of the test. Second, she was terminated from her posi- tion with defendants; thus, she has satis- fied the adverse employment action compo- nent.

The third component of the *McDonnell Douglas* test requires that plaintiff prove she was replaced by an individual outside

the protected class.[4] The evidence present- ed by plaintiff in this case shows that she was initially replaced by Ms. Mabel Zerblis. Ms. Zerblis had worked for Mr. Smith prior to the time Mrs. Bruce was hired. Mr. Smith re-hired Ms. Zerblis to fill Mrs. Bruce's position after she was terminated. Ms. Zerblis was also fifty-seven at the time she replaced Mrs. Bruce. Shortly after Mrs. Bruce was fired, Mr. Smith also hired a full-time secretary, Ms. Gann, who was under forty years of age. Ms. Gann per- formed a lot of the functions formerly ful- filled by Mrs. Bruce. After Ms. Gann be- gan work, Ms. Zerblis worked only part- time. While Ms. Zerblis, Mrs. Bruce's im- mediate replacement, was older than Mrs. Bruce, the court believes a jury could de- termine that Ms. Gann was, in fact, Mrs. Bruce's permanent replacement. As stated above, Ms. Gann was under forty at the time she began working for defendants. The court finds, therefore, that a genuine issue of fact remains as to whether plain- tiff was effectively replaced by Ms. Gann. In addition, even if plaintiff was replaced permanently by Ms. Zerblis, plaintiff's pri- ma facie case is not necessarily defeated. More and more frequently, courts are view- ing the third component of *McDonnell Douglas* as a flexible factor. *Carter*, 870 F.2d at 578; *Nix v. WLCY Radio/Rahal Communications*, 738 F.2d 1181, 1187 (11th Cir.1984).

The fourth component of the test re- quires that plaintiff demonstrate she was qualified for the job. There is no doubt that Mrs. Bruce was qualified to perform the secretarial work she was performing until the time of her termination, the work that Ms. Gann continues to do. Defen- dants argue that Bruce was not computer literate and therefore was unqualified to retain her position after the office started using computers. The court finds that there is a material issue of fact remaining for trial as to whether Bruce was qualified. Familiarization with computers can be a

---

**4.** The third prong is treated with some flexibili- ty in age discrimination cases. Some Circuits have stated explicitly that a plaintiff need show only that she was replaced by a younger person. *See, e.g., Carden v. Westinghouse Electric Corp.*, 850 F.2d 996, 1000 (3d Cir.1988); *Furr v. AT & T*

*Technologies, Inc.*, 824 F.2d 1537, 1542 (10th Cir.1987). The First Circuit has gone so far as to hold that a plaintiff attempting to prove age discrimination need not show that she was re- placed by someone younger. *Loeb v. Textron, Inc.*, 600 F.2d 1003, 1012–13 (1st Cir.1979).

short process, requiring just a day or two to learn simple programs. It is quite possible that Mrs. Bruce could have learned to operate a new computer without much trouble. Furthermore, if a jury determined that Ms. Gann was Mrs. Bruce's full-time replacement, plaintiff could demonstrate that Gann did not perform any computer duties. Thus, Mrs. Bruce would not have to establish that she was computer literate to demonstrate she was qualified for the job.

Plaintiff has satisfied the four components of *McDonnell Douglas*. Defendants have failed to rebut this prima facie case. Defendants simply assert in their reply brief that plaintiff was unqualified for her job as a computer operator. As the court discussed above, questions of fact remain as to whether Mrs. Bruce's full-time replacement could operate a computer and whether Mrs. Bruce's position even required computer knowledge (i.e., knowledge of computers could be a pretextual requirement). Second, plaintiff could quite likely demonstrate that with a day or to of training she could have worked the necessary computer programs.[5] Accordingly, the court DENIES defendants' motion for summary judgment on plaintiff's age discrimination claim.

### D. ERISA

Count III of plaintiff's Amended Complaint states a cause of action against defendants for violation of the Employee Retirement Income Security Act, 29 U.S.C. § 1140.

> Section 1140 provides in pertinent part: It shall be unlawful ... to discharge ... a participant or beneficiary ... for purpose of interfering with the attainment of any right to which such participant may become entitled under the plan.

The primary purpose of this section is to prevent unscrupulous employers from discharging their employees purely to keep them from obtaining vested pension rights. *West v. Butler*, 621 F.2d 240 (6th Cir.1980). In order to recover under this section, plaintiff must show that defendants terminated her with the specific intent of interfering with her rights under defendants' benefit plans. *Baker v. Kaiser Aluminum and Chemical Corp.*, 608 F.Supp. 1315, 1318 (N.D.Ca.1984); *Nixon v. Celotex Corp.*, 693 F.Supp. 547, 555 (W.D.Mich. 1988). Plaintiff "must establish more than the mere fact that termination of [her] employment meant a monetary savings to defendants, 'for to allow otherwise would mean that an ERISA violation would automatically occur every time an employer terminated a vested employee.'" *Nixon*, 693 F.Supp. at 555, (quoting *Donohue v. Custom Management Corp.*, 634 F.Supp. 1190 (W.D.Pa.1986)). Plaintiff must therefore demonstrate a causal link between pension benefits and her termination. To avoid summary judgment on her ERISA claim plaintiff must put forth evidence "from which a reasonable jury could find that defendants' desire to avoid pension liability was a determining factor in plaintiff's discharge." *Nixon*, 693 F.Supp. at 555.

■ After reviewing the evidence in a light most favorable to plaintiff, the court concludes that plaintiff cannot survive summary judgment on her ERISA claim. Plaintiff merely has made blanket assertions that defendants "intended to interfere with her pension rights by terminating her ... [and] has stated that it was her belief that defendants intended to prevent her from vesting fully in the pension plan." Plaintiff's Response to Defendants' Motion for Summary Judgment, p. 20. Plaintiff's bare assertions will not enable her to overcome defendants' motion; conclusory allegations of discrimination will not defeat a motion for summary judgment. Defendants are entitled to summary judgment on defendants' ERISA claim.

---

**5.** Defendants assert that "[i]t is completely undisputed that Bruce was unable to operate a computer when she left ... CDI maintains that Bruce was in fact reluctant to learn to operate a computer...." Reply brief, p. 23. However, in her deposition, Mrs. Bruce testifies as follows:

Q. And you couldn't handle those computers, could you?
A. Well, if I was given chance. We never had any computers there ... but I could learn. I have learned.
Bruce Deposition, p. 33, 1.1. 6–12.

**E. O.C.G.A. § 34–1–2**

■ Finally, defendants move for summary judgment on plaintiff's age discrimination claim brought pursuant to O.C.G.A. § 34–1–2. Defendants assert that this statute does not provide a private right of action for age discrimination. Plaintiff responds by asserting that O.C.G.A. § 51–1–8 provides that a cause of action may arise from the violation of a private duty created by statute. Thus, plaintiff asserts that sections 34–1–2 and 51–1–8, when read together, provide plaintiff with cause of action. Plaintiff cites *Dill v. The Travelers Insurance Co.*, No. C84–2542A (N.D.Ga.1985) (Ward, J.) to support her theory. However, in *Calhoun v. Federal National Mortgage Association*, 823 F.2d 451, 455 (11th Cir. 1987), the Eleventh Circuit affirmed a district court holding that no private right of action exists under O.C.G.A. § 34–1–2. *Calhoun* was decided after *Dill* and is binding on this court. Accordingly, the court grants defendants summary judgment on plaintiff's state law age discrimination claim.

CONCLUSION

The court PARTIALLY GRANTS and PARTIALLY DENIES defendants' motion for summary judgment. The court DENIES defendants summary judgment on plaintiff's ADEA claim and GRANTS defendants summary judgment on plaintiff's ERISA claim and state law age discrimination claim (O.C.G.A. § 34–1–2).

SO ORDERED.