**Donald NIXON and Claire Nixon, Plaintiffs,**

v.

**The CELOTEX CORPORATION, et al., Defendants.**

**No. G85–628 CA.**

United States District Court, W.D. Michigan, S.D.

March 4, 1988.

Parmenter, Forsythe, Rude, Van Epps, Briggs & Fauri by Arthur M. Rude, Muskegon, Mich. (Bergevin and Goodman, Dennis J. Bergevin, of counsel), Bay City, Mich., for plaintiffs.

Varnum, Riddering, Schmidt, & Howlett, Richard Kay, Myra Willis, Grand Rapids, Mich., for defendants.

## OPINION

BENJAMIN F. GIBSON, District Judge.

Donald Nixon is a former sales representative of The Celotex Corporation ("Celotex") who was discharged by the company during a "reduction in force." The reduction was allegedly the result of economic conditions that required the company to consolidate its sales staff. After his discharge, Nixon filed a charge with the Michigan Department of Civil Rights ("MDCR") and the Equal Employment Opportunity Commission ("EEOC") claiming that he had been terminated because of his age. While the charges were pending, Nixon filed this lawsuit, along with his wife, Claire Nixon, re-alleging the claims for age discrimination under the Michigan Elliott–Larsen Civil Rights Act ("Elliott–Larsen"), M.C.L.A. § 37.2101 *et seq.* and the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq.*, as well as asserting other causes of action, including breach of employment contract, violation of the Employment Retirement Income Security Act ("ERISA"), 29 U.S.C. §§ 1001 *et seq.*, and loss of consortium. After investigation, the charges pending before the MDCR were dismissed.

Presently pending before the Court are defendant Jim Walter Corporation's ("JWC") motion to dismiss and defendants JWC and Celotex's motion for summary judgment. Alternatively, defendants seek a stay of proceedings. Plaintiffs have filed a motion for leave to amend their complaint to add a count for negligent supervision. The motions will be discussed *seriatim.*

### JWC'S MOTION TO DISMISS

Defendant JWC has moved for dismissal on the ground that the Court lacks both

general and limited personal jurisdiction over the company. In support of its motion for dismissal, defendant contends that it does not now, nor has it ever, maintained any business relationship with the State of Michigan. The burden is on the plaintiff to establish that the court has jurisdiction. In determining whether the court has personal jurisdiction over a defendant, the pleadings and affidavits are to be considered in a light most favorable to the plaintiff and, in the absence of an evidentiary hearing on the jurisdictional issue, the plaintiff need only make out a *prima facie* case. *Welsh v. Gibbs*, 631 F.2d 436, 438 (6th Cir.1980).

In the instant cause of action, plaintiffs allege causes of action under both federal and state law. In a diversity case, a federal court must look to the law of the forum state to determine whether it has personal jurisdiction over a foreign corporation. 28 U.S.C.A. § 1332(c); *Velandra v. Regi National Des Usines Renault*, 336 F.2d 292, 297 (6th Cir.1964). This Court can constitutionally exercise in personam jurisdiction over a non-resident defendant if two basic requirements are met. First, the defendant must come within the reach of one of Michigan's long-arm statutes. Here, the relevant statute is M.C.L.A. § 600.715 which provides that Michigan courts may assert limited personal jurisdiction over a non-resident corporation and enter personal judgments against such corporation arising out of any act or acts which create certain relationships with Michigan. Michigan's long arm statute is also applicable in a cause of action under federal law. Plaintiffs claim that JWC's conduct creates the following relationships recognized under the Michigan long-arm statute: 1) the transaction of business within the state; 2) the doing or causing of any act to be done, or consequences to occur, in the state resulting in an action for tort; and 3) entering into a contract for services to be performed or for material to be furnished in the state by the defendant.

■ JWC contends that plaintiffs have failed to put forth sufficient facts to support either general or limited personal jurisdiction in this matter. Defendant contends that the only nexus between JWC and the state of Michigan is the fact that the company is the sole shareholder in Celotex, which conducts local activities in Michigan. Plaintiffs, however, negate this contention. In rebuttal, plaintiffs contend that JWC was integrally involved in every step of Celotex's management and supervision of plaintiff Don Nixon. Plaintiffs further contend that the cause of action asserted is directly related to JWC's contacts with the state. Plaintiffs have offered undisputed evidence that Nixon's managers, Herman "Doc" Eckstein and Chuck Ferris, both were employees of JWC. There is also evidence that the personnel manual and employment policies which govern Celotex personnel were developed and set by JWC. Employee salary and pension benefits were paid with checks drawn on JWC accounts. There is further evidence that the initial decision to eliminate employee positions at Celotex was made by JWC. In addition, plaintiffs have alleged that defendants have failed to provide discoverable information which is needed to enable plaintiffs to conclusively establish the propriety of the Court's exercise of jurisdiction. The Court finds that the evidence offered is sufficient to satisfy the requirements of the Michigan long-arm statute for purposes of limited jurisdiction.

■ The second requirement for the assertion of personal jurisdiction is that the defendant must have sufficient minimum contacts with the forum state such that the assumption of jurisdiction over the non-resident does not offend traditional notions of fair play and substantial justice embodied in the Due Process Clause. *Rush v. Savchuk*, 444 U.S. 320, 327, 100 S.Ct. 571, 576, 62 L.Ed.2d 516 (1980); *Worldwide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980). Since the Michigan Supreme Court has construed Michigan's long-arm statutes to provide the broadest possible reach consistent with due process requirements, *see, e.g., Witbeck v. Bill Cody's Ranch Inn*, 428 Mich. 659, 411 N.W.2d 439 (1987), this Court's dual inquiry into whether it may assert personal jurisdiction over JWC merges into a single question: Would due process guarantees

be violated by the exercise of limited personal jurisdiction over the defendant? *Davis H. Elliot Co. v. Caribbean Utilities Co.*, 513 F.2d 1176, 1179 (6th Cir.1975); *Herman Miller v. Mr. Rents, Inc.*, 545 F.Supp. 1241, 1244 (W.D.Mich.1982).

Additionally, when determining whether personal jurisdiction exists, the Court should evaluate the following factors: 1) the burden on defendant; 2) the interest of the forum state; 3) the interest of the plaintiff in obtaining relief; 4) the interstate judicial system's interest in promoting a judicially efficient resolution; and 5) the shared interest of the several states in furthering fundamental substantive social policies. *Asahi Metal Industry Co. v. Superior Court of California*, 480 U.S. 102, 107 S.Ct. 1026, 1034, 94 L.Ed.2d 92 (1987); *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477, 105 S.Ct. 2174, 2184, 85 L.Ed.2d 528 (1985); *World–Wide Volkswagen v. Woodson*, 444 U.S. 286, 292, 100 S.Ct. 559, 564, 62 L.Ed.2d 490 (1980).

After a review of the record in light of the inquiries set forth by the Supreme Court, the Court finds that the exercise of personal jurisdiction in this case would be proper. JWC claims that an independent subsidiary's conduct is not attributable to the parent for purposes of personal jurisdiction. In deciding this issue, the Sixth Circuit Court of Appeais, in *Velandra v. Regie Nationale Des Usines Renault*, 336 F.2d 292 (6th Cir.1964), has stated that "the law relating to the fictions of agency and of separate corporate entity was developed for purposes other than determining amenability to personal jurisdiction, and the law of such amenability is merely confused by reference to the inapposite matters." *Velandra*, 336 F.2d at 297. "[A]n analytical rather than a mechanical or formalistic approach is appropriate upon the issue of personal jurisdiction based upon ownership of the stock of a corporation carrying on local activities." *Velandra*, 336 F.2d at 297, n. 21.

The essential question with respect to personal jurisdiction is one of due process. The due process inquiry focuses on notions of fairness and substantial justice. Corporate law theories of agency and "alter ego" are not entirely congruent with this inquiry because to some extent they invoke fictional notions of separateness. There may be some situations where a subsidiary could not be considered an agent or alter ego under corporate law, but it would nonetheless be fair to subject the parent to jurisdiction for some its subsidiary's activities. "The parent-subsidiary distinction represents merely one contact or factor to be considered in assessing the existence or non-existence of the requisite minimum contacts with the State of Michigan." *Velandra*, 336 F.2d at 297.

It is the opinion of the Court that in light of JWC's alleged active participation in Celotex's employment, pension and sales decisions, Celotex's contacts with Michigan may fairly be attributed to JWC for purposes of an action arising out the employment relationship and relating to employment and personnel decisions made jointly by JWC and Celotex. Because Celotex has substantial contacts with the state of Michigan which are allegedly controlled by JWC and because the action arose out of those contacts, this Court may properly exercise "specific" jurisdiction over JWC. The relevant facts are as follows:

1. Employees carried business cards that identified them as representatives of both Celotex and JWC;

2. Checks, memoranda, and personnel manuals are all from JWC;

3. Regional sales managers who supervised plaintiff Don Nixon were Celotex employees;

4. The initial decision to reduce the Celotex sales force came from JWC; and

5. JWC played a significant part in directing the employment practices and personnel decisions of Celotex.

As a matter of fairness, JWC should be held accountable for its subsidiary's contacts with a forum when a lawsuit arises in that forum concerning conduct which JWC controls.

In addition, applying the four-factor "reasonableness of jurisdiction" test recently set forth by the Supreme Court, the

Court finds that the burden on defendant is outweighed by the other factors in this case. JWC's subsidiary is a co-defendant in this case and the parties share joint counsel. It is no great expense or burden for JWC to try this lawsuit in Michigan.

As noted in *Burger King,* this state has a "manifest interest in providing its residents with a convenient forum for redressing injuries inflicted by out-of-state actors," 105 S.Ct. at 2183. The plaintiffs, Don and Claire Nixon, are Michigan residents. The employment relationship between Nixon and the defendants took place in Michigan. The alleged wrongful conduct took place in Michigan. Unlike the situation present in *Asahi,* here the plaintiffs are citizens of the forum state and thus the state has an interest in this matter.

Also, while it may be possible to obtain relief from the subsidiary alone in this case, much of the evidence will involve JWC. As Celotex is a wholly-owned subsidiary, any damages recovered will affect JWC's financial interests. Thus, in the interest of judicial efficiency, this Court finds it expedient to have JWC as a named party in this action. In conclusion, this Court finds that the exercise of jurisdiction over the parent is "eminently reasonable" considering the facts and circumstances of this case. JWC's motion for dismissal based on lack of personal jurisdiction is denied.

## SUMMARY JUDGMENT ON PLAINTIFF'S AGE DISCRIMINATION CLAIMS

Defendants' motion is made pursuant to Rule 56 of the Federal Rules of Civil Procedure, which reads in pertinent part as follows:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

To warrant the grant of summary judgment, the moving party bears the burden of establishing the non-existence of any genuine issue of fact that is material to a judgment in his favor. *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 147, 90 S.Ct. 1598, 1603, 26 L.Ed.2d 142 (1970); *United States v. Articles of Device ... Diapulse,* 527 F.2d 1008, 1011 (6th Cir.1976). In determining whether or not there are issues of fact requiring a trial, "the inferences to be drawn from the underlying facts contained in the affidavits, attached exhibits, and depositions must be viewed in the light most favorable to the party opposing the motion." *United States v. Diebold, Inc.,* 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962); *Bohn Aluminum & Brass Corp. v. Storm King Corp.,* 303 F.2d 425 (6th Cir.1962).

In a recent trilogy, the Supreme Court has clarified and reinforced the appropriate scope and use of summary judgment motions. *Matsushita Electrical Industrial Co. v. Zenith Radio Corp.,* 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Celotex v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). *See generally* S. Childress, *"A New Era for Summary Judgments: Recent Shifts at the Supreme Court,"* 116 F.R.D. 183 (1987). In *Celotex,* the Supreme Court emphasized the fact that:

> [T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a sufficient showing to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.... A complete failure of proof by the non-movant on an element renders all facts immaterial, so the movant is entitled to judgment as a matter of law.

106 S.Ct. at 2552–53. A necessary corollary to this broadening of the availability of summary judgment is the broadening of the role of discovery in summary dispositions. In *Cooley v. Pennsylvania Housing Finance Agency,* the Third Circuit Court of Appeals noted that, in deciding

motions for summary judgment, "a noteworthy consideration is a question of timing." 830 F.2d 469, 474 (3rd Cir.1987). "If complete and adequate discovery has been afforded to the parties, then the case of the party bearing the ultimate burden of proof can be put to task by the opposition through a Rule 56 motion." *Id.* With these guidelines in mind, the Court will analyze defendants' motion.

A. *Nixon's Age Discrimination Claims.*

██ Plaintiff has alleged causes of action under both Michigan and federal law for discrimination on the basis of age. Defendants move for summary judgment on these claims, in part, on the ground that they are untimely filed. It is undisputed that plaintiff received notice of discharge on June 15, 1982, effective July 15, 1982. This lawsuit was filed on June 26, 1985. Thus, under either the three-year or two-year limitation period for ADEA claims under federal law, plaintiff's claim under federal law is untimely. *Chardon v. Fernandez,* 454 U.S. 6, 102 S.Ct. 28, 70 L.Ed.2d 6 (1981); *Delaware State College v. Ricks,* 449 U.S. 250, 101 S.Ct. 498, 66 L.Ed.2d 431 (1981).

██ With respect to plaintiff's Elliott–Larsen claim, defendants assert that the statute of limitations begins to run when the plaintiff is notified of the discriminatory act, as under Title VII. In response, plaintiff asserts that, under Michigan law, the limitations period starts to run from the time of actual termination.

Recently, the Michigan Supreme Court acknowledged but did not decide this issue. *Sumner v. Goodyear Tire & Rubber Co.,* 427 Mich. 505, 398 N.W.2d 368 (1986). In *Sumner,* the court explained:

We note nevertheless that the early accrual date mandated by *Ricks* and *Chardon* may conflict with the principle, well-established in Michigan law, that a cause of action does not accrue until an injury has occurred. We leave further exploration of this possible conflict to another date....

A few months later, the Sixth Circuit addressed this issue in *Janikowski v. Bendix Corp.,* 823 F.2d 945 (6th Cir.1987). The court realized its task was a difficult one, but ultimately held that the limitations period, under Michigan law, runs from the time of termination:

Guessing what the Michigan Supreme Court will hold in a case not yet before it, upon an issue it has never addressed, is no sport for the short-winded. But guess we must, in the proper exercise of our diversity jurisdiction over plaintiff's Michigan Elliot–Larsen claim of discriminatory discharge. Our guess is that if it were confronted with the issue before us, the Michigan Supreme Court would veer away from the current federal precedent and declare that the period of limitations for the plaintiff's Elliot–Larsen claim began to run the date plaintiff actually stopped working.

*Janikowski,* 823 F.2d at 948–49 (footnote omitted).[1]

The *Janikowski* and *Sumner* opinions indicate the unsettled nature of this question. However, unlike the court in *Janikowski,* this Court is not forced to render another decision of state law. Absent controlling precedent to the contrary from the Michigan court, this Court is bound by the Sixth Circuit opinion in *Janikowski.* Although defendants cite unreported Michigan Court of Appeals cases to the contrary, those cases are not binding on this Court. *See* M.C.R. 7.215(C). Accordingly, the Court finds as a matter of law that the plaintiff's age discrimination claim under Elliott–Larsen was timely filed. In any event, the Court finds that defendants are nonetheless entitled to summary judgment in their favor.

Although plaintiff's claim was timely filed, a review of the evidence presented and the relevant statutory and case law leads the Court to conclude that plaintiff has failed to present sufficient evidence to support an age discrimination claim under Michigan law. As judicial interpretation of Elliott–Larsen follows federal interpreta-

1. Judge Nelson, in his dissent, concluded that the Michigan Supreme Court would follow the *Risks/Chardon* federal precedent. *Janikowski,* 823 F.2d at 954 (Nelson, J., dissenting).

tion of the ADEA, the Court must utilize the same analysis and evidentiary burdens in evaluating plaintiff's claim under Michigan law. *See Simpson v. Midland–Ross Corp.*, 823 F.2d 937, 940 (6th Cir.1987); *Matras v. Amoco Oil Co.*, 424 Mich. 675, 385 N.W.2d 586 (1986). To establish a *prima facie* case of age discrimination, plaintiff must present evidence which, when viewed in a light most favorable to plaintiff, would permit a reasonable jury to conclude that plaintiff was discharged because of age. *La Grant v. Gulf & Western*, 748 F.2d 1087 (6th Cir.1984). There must be evidence that age made a difference in defendants' decision to discharge plaintiff. *Ackerman v. Diamond Shamrock Corp.*, 670 F.2d 66 (6th Cir.1982); *Gallaway v. Chrysler Corp.*, 105 Mich.App. 1, 306 N.W. 2d 368 (1981).

 It is undisputed that Celotex reduced its work force, although the validity of the economic necessity of this action has been contested. Celotex eliminated Nixon's position and split his former territory between two retained employees. One was younger, the other older than 40. The Sixth Circuit Court of Appeals has held that the plaintiff who has been terminated during a corporate reorganization carries a greater burden in supporting a discrimination claim than an employee who was not terminated for similar reasons. *Ridenour v. Lawson Co.*, 791 F.2d 52, 57 (6th Cir. 1986). Evidence that a competent older person was terminated and that a younger employee was retained is, standing alone, insufficient to establish a *prima facie* case when an employer reduces his work force because of economic necessity. *Dabrowski v. Warner–Lambert Co.*, 815 F.2d 1076 (6th Cir.1987); *Matras,* 424 Mich. at 684, 385 N.W.2d 586. In such situations, the plaintiff must produce additional direct, circumstantial, or statistical evidence that age was a factor in his termination. *La Grant,* 748 F.2d at 1090–91.

 In his deposition, plaintiff admitted that he had no direct evidence of age discrimination. No one ever said anything to him which indicated that age was a factor in the termination decision. With reference to circumstantial evidence, there is scant evidence from which to infer that age was a significant factor in the company's decision. In addition, the statistical evidence presented is in direct conflict with a claim for age discrimination. In plaintiff's region, there were three sales representatives retained by Celotex who were between 53 and 56 years old. Nationwide, only two of eight sales representatives whose territories were consolidated were over 40. Overall, eighteen employees were retained by Celotex; seven of these were over 40 and five of those seven were over 55. Six of the eight terminated representatives were less than 40. The only other sales person terminated in plaintiff's region, Jerry Beuhner, was 34 years old. Three of the persons assigned part of plaintiff's former territory were over 40; one was even 53. There is simply no evidence of a pattern of discrimination based on age.

 The only evidence presented in support of Nixon's age discrimination claim is the statement made by the Regional Manager, Eckstein, when Nixon was notified of his termination. According to Nixon's deposition testimony, Eckstein made the following comment: "I've got some good news and some bad news for you. We are going to absorb the Grand Rapids territory and you being with the company long enough to acquire enough points, you're eligible for retirement. And this being the case, this will not be a hardship on you."

A "mere scintilla" of evidence will not support a finding of age discrimination. There must be evidence of discriminatory purpose and there must be evidence from which a jury could reasonably conclude that age was the more likely reason for plaintiff's discharge, rather than a mere "speculative possibility." *Simpson v. Midland–Ross,* 823 F.2d at 944; *Anderson v. Liberty–Lobby,* 106 S.Ct. at 2511. The statements made by Eckstein are not probative of age discrimination. No reasonable jury could conclude, based on such statements, that Nixon was discharged on the basis of age. Although plaintiff challenges the manner in which the terminations were made, absent evidence of age

discrimination, this does not alter the Court's conclusion. Elliott–Larsen, like the ADEA, was not intended as a vehicle for judicial review of business decisions. *See Ackerman,* 670 F.2d at 70. As a result of the lack of evidence to support his claim, plaintiff's cause of action under Elliott–Larsen must be dismissed.[2]

### B. *Nixon's Claim for Violations of ERISA.*

■ Defendants have also moved for summary judgment on plaintiff's claim for violation of ERISA. In support of their motion, defendants advance numerous arguments; however, the Court need address only one. Under Section 510 of ERISA, it is unlawful for any person to "discharge, fine, suspend, expel, discipline, or discriminate against a participant or beneficiary for the purpose of interfering with the attainment of benefits to which they may be entitled." 29 U.S.C. § 1140. To prevail on such a claim, plaintiff must first establish that defendants terminated him with the "specific intent" to interfere with his rights under the benefit plan. *See Baker v. Kaiser Aluminum & Chemical Corp.,* 608 F.Supp. 1315 (N.D.Cal.1984). Plaintiff must establish more than the mere fact that termination of his employment meant a monetary savings to defendants, "for to allow otherwise would mean that an ERISA violation would automatically occur every time an employer terminated a vested employee." *Donohue v. Custom Management Corp.,* 634 F.Supp. 1190 (W.D.Pa.1986). The "something more" which must be shown is a causal link between pension benefits and the adverse employment decision. In order to survive defendants' motion for summary judgment, plaintiff must come forward with evidence from which a reasonable jury could find that defendants' desire to avoid pension

liability was a determining factor in plaintiff's discharge.

A review of the evidence presented in a light favorable to plaintiff leads the Court to conclude that plaintiff has failed to produce sufficient evidence to withstand the motion for summary judgment. There is no direct or circumstantial evidence of a discriminatory intent in violation of ERISA. Nor does the statistical evidence presented support plaintiff's claim. To the contrary, the evidence presented shows that plaintiff was the only terminated employee eligible for pension benefits. Based on these facts, the Court must conclude that there is insufficient evidence to maintain a claim for an ERISA violation. As a result, defendants' motion for summary judgment on plaintiff's ERISA claim is granted.

### C. *Nixon's Breach of Contract Claim.*

Defendants have also moved for summary judgment on plaintiff's breach of contract claim. In his complaint, Nixon alleges that the defendants breached both express and implied contracts of employment. First, plaintiff alleges that defendants created an implied contract of employment to age 65. Second, Nixon alleges that defendants had a "discharge-for-cause" policy which was breached when defendants discharged him "without just cause, notice, warning or opportunity to correct causes for discharge, if any." In support of this contention, Nixon contends that when he was hired by Celotex, he was promised that he would be retained even in times of economic hardship. Nixon further contends that, even if economics mandated a decrease in the work force, he should have been retained on the basis of seniority. For reasons stated below, the Court finds that defendants are entitled to summary judgment in their favor.

**2.** Although plaintiffs challenge the propriety of summary judgment in light of alleged refusals by defendants to comply with certain discovery requests, it is the opinion of the Court that the documents allegedly withheld would not support a different conclusion where there is undisputed evidence that defendants made a business decision that the reduction in force was in fact

necessary. This Court may not second guess or substitute its judgment for that of the company on business decisions where there is no evidence that the decisions were made in bad faith or for discriminatory purposes. *See Elenbaas v. Coca–Cola Bottling Co.,* No. 83–41315–CZ, slip op. at 8 (Kent County Cir.Ct., Sept. 16, 1985).

■ With respect to plaintiff's first allegation of promised employment to age 65, the Court finds as a matter of law that plaintiff's claim is barred by the Statute of Frauds. Unlike contracts for indefinite terms, contracts of continued employment to age 65 are governed by the Michigan Statute of Frauds which provides that contracts which by their terms are not to be completed within one year must be in writing to be enforceable. M.C.L.A. § 566.132. Plaintiff has failed to produce a writing in satisfaction of this requirement. Nor has plaintiff produced sufficient evidence to justify taking the promise of employment outside the statute. As a result, defendants are entitled to summary judgment with respect to that claim.

■ Defendants also assert that they are entitled to summary judgment on plaintiff's allegation of discharge without cause in violation of company policy. In support of this assertion, defendants contend that since plaintiff was discharged as a result of a "reduction in force" for economic reasons, a cause of action may not be maintained under *Toussaint v. Blue Cross & Blue Shield*, 408 Mich. 579, 292 N.W.2d 880 (1980). In *Toussaint*, the Michigan Supreme Court created an exception to the general rule of employment at will. Simply put, the Michigan Supreme Court held that where an employer, through formal or informal actions, adopts a policy of discharge for cause only, an employee has a right to rely on that policy and may not be discharged in violation thereof. *Id.* In the instant case, plaintiff was not discharged from a continuing position; his position was eliminated. Both federal and state courts have held that the *Toussaint* doctrine is inapplicable to such a situation.[3] *Grubb v. W.A. Foote Memorial Hospital*, 741 F.2d 1486 (6th Cir.1984), *vacated on other grounds*, 759 F.2d 546 (6th Cir.), *cert. denied*, 474 U.S. 946, 106 S.Ct. 342, 88 L.Ed.2d 289 (1985); *Temerowski v. Great*

*Lakes Steel*, No. 84CV485 slip op. at 7 (E.D.Mich.1986); *Bhogaonker v. Metropolitan Hospital*, 164 Mich.App. 563, 417 N.W.2d 501 (Mich.App.1987); *Friske v. Jasinski Builders Inc.*, 156 Mich.App. 468, 402 N.W.2d 42 (1986).

In *Friske*, the Michigan Court of Appeals held that "termination of an otherwise competent employee due to an economically motivated business closing is not grounds for a wrongful discharge claim." 156 Mich.App. at 475, 402 N.W.2d 42. The court noted that a contrary holding "would impose an unworkable economic burden upon employers to stay in business to the point of bankruptcy in order to satisfy employment contracts and related agreements terminable only for good or sufficient cause." *Id.* at 470, 402 N.W.2d 42. The facts in this case are analogous to those in *Friske* and the Court finds the reasoning persuasive. As a result, the Court finds that the *Toussaint* doctrine does not apply to a reduction in force based on economic necessity. In addition, the Court finds that although plaintiff challenges the actual existence of an economic decline, the undisputed evidence presented establishes that Celotex and JWC perceived such a decline and acted in response to that perception. Both plaintiff and defendants' witnesses testified at depositions that the building trades were experiencing a slump nationwide. Eckstein testified that due to adverse economic conditions, the company had to "tighten its belt." Eckstein further testified that the company decided to eliminate employees based on relative performance and, on that basis, it was decided to terminate Nixon. This Court may not substitute its business judgment for that of the company. "[O]nce an employer has made a decision to reduce its work force due to poor economic conditions, how he goes about effectuating that force reduction is a matter within the employer's judg-

3. The Court is aware of the Sixth Circuit Court of Appeals' decision in *Boynton v. TRW, Inc.*, 781 F.2d 555 (6th Cir.1986), vacated for hearing *en banc*, slip op. (6th Cir. April 10, 1986). *See Massa v. Eaton Corp.*, No. K85–18 CA (W.D. Mich. Feb. 20, 1986). However, in light of the court's vacating said opinion, there is no precedential value to *Boynton* and subsequent persuasive authority convinces the Court that the Sixth Circuit will probably decline to construe *Toussaint* in the same fashion on hearing *en banc*.

ment and discretion." *Temerowski*, slip op. at 7.

▮ Plaintiff further asserts that defendants' decision to discharge him was wrongful in that persons should have been terminated on the basis of seniority. However, Nixon has neither alleged in his complaint nor offered evidence that Celotex had either a verbal or written policy that, during adverse economic conditions, discharges would be made on the basis of seniority. In fact, Nixon admitted that the company had no such written or verbal policy and "stayed away from those kinds of commitments." At best, Nixon has established that he had a subjective expectation that discharges would be based on seniority. Such expectations on the part of Nixon do not create an enforceable contract right. *Schwartz v. Michigan Sugar Co.*, 106 Mich.App. 471, 308 N.W.2d 459 (1981). *See also Kay v. United Technologies Corp.*, 757 F.2d 100 (6th Cir.1985).

▮ As a third basis for his breach of contract claim, Nixon contends that he had an oral promise for continued employment even in times of economic decline. In support of this contention, Nixon offers evidence of statements made by Ralph Dewey, a Celotex employee, at the time Nixon was recruited in 1959. Nixon has presented affidavit testimony which states that Dewey assured Nixon "a lot of job security" and that Dewey told Nixon that the policy of Celotex was to never let an employee go because of economic circumstances. This testimony is further corroborated by that of James Lynch. It is Nixon's contention that these representations establish that Celotex had a policy of retaining employees even in times of economic duress. Nixon further contends that his discharge in violation of that policy constitutes actionable conduct.

It is the opinion of the Court that these statements do not give rise to actionable conduct. At the time these statements were made, in 1959, Celotex was an independent company. Subsequently, Celotex became a part of the JWC corporate fami-

ly. There is no indication that JWC adopted or was even aware of such a policy. In any event, it was a unilateral policy made for the benefit of employees in general and not specific to Nixon. Even if plaintiff is correct and Celotex originally had such a policy of not discharging employees even in times of economic duress, it is undisputed that the policy was changed and that the change in policy was uniformly applied. "There is nothing in *Toussaint* or its progeny that prohibits a company from making unilateral changes in policy." *Ledl v. Quik Pik Stores*, 133 Mich.App. 583, 587, 349 N.W.2d 529 (1984). As a result, there is no basis upon which a reasonable jury could conclude that plaintiff had a reasonable expectation of continued employment in times of economic duress and defendants are entitled to summary judgment on that claim.[4]

## THE NIXONS' MOTION TO AMEND COMPLAINT

▮ Plaintiffs have filed a motion for leave to amend their complaint under Federal Rule of Civil Procedure 15(a) to add a claim for negligent job supervision. It is plaintiffs' contention that such conduct is actionable under Michigan law. Defendants argue that plaintiff Don Nixon's negligent supervision claim is not cognizable under Michigan law. In the alternative, it is defendants' contention that, to the extent plaintiff does state a cognizable claim, it is barred by the three-year limitations period for negligence.

Although Rule 15(a) states that leave to amend "shall be freely given when justice so requires," leave need not be given if the amendment would be futile. *Hageman v. Signal L.P. Gas, Inc.*, 486 F.2d 479, 484 (6th Cir.1973), citing *Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962).

In the instant case, the Court concludes that plaintiffs' proposed amendment would indeed be futile. In order to support a separate tort claim under Michigan law, tortious conduct must exist independent of the facts which give rise to a breach of

---

4. *Ibid,* note 2.

contract claim. *Valentine v. General American Credit*, 420 Mich. 256, 362 N.W. 2d 628 (1984). Plaintiff's allegation with respect to supervision of his job performance are integrally related to the company's duties under the employment contract. Such duties are contractual in nature and do not give rise to a separate negligence action. *See Huth v. Executone, Inc.*, 42 E.P.D. ¶ 36,710 (E.D.Mich.1986); *Brewster v. Martin–Marietta*, 145 Mich.App. 641, 378 N.W.2d 558 (1985). In any event, a claim for negligence is governed by a three-year limitation period. M.C.L.A. § 600.5805. Any conduct giving rise to such a claim necessarily arose during the course of plaintiff's employment and prior to his notice of discharge. As a result, even if a claim for negligent evaluation sounding in tort could be maintained, it would be barred by the applicable statute of limitations. Based on these facts, the Court finds that amendment of plaintiffs' complaint to allege such a claim would be futile. Accordingly, the motion to amend the complaint is denied.

## CONCLUSION

For the reasons stated above, the Court finds that JWC's motion for dismissal on the basis of lack of personal jurisdiction is denied. The Court further finds that defendants JWC and Celotex's motion for summary judgment on Counts I, III, and IV of plaintiffs' complaint is granted.[5] Plaintiffs' motion to amend the complaint to add a count for negligent supervision is denied. Having disposed of plaintiff Don Nixon's substantive claims, there is no basis for plaintiff Claire Nixon's loss of consortium claim and defendants' motion for summary judgment on Count VII is likewise granted. Having disposed of the remaining claims in this action, the instant lawsuit is dismissed with prejudice and without costs.

5. Counts II, V and VI of plaintiffs' complaint were dismissed by stipulation of the parties.