James ANDREWS, Plaintiff,

v.

JONES TRUCK LINES, Defendant.

Civ. A. No. 88–2442–V.

United States District Court,
D. of Kansas.

June 14, 1990.

Daniel B. Denk, R. Jeff Fendore, McAnany, Van Cleave & Phillips, Kansas City, Kan., for plaintiff.

David W. Hauber, Robert S. Lannin, Boddington & Brown, Kansas City, Kan., for defendant.

## MEMORANDUM AND ORDER

VAN BEBBER, District Judge.

This is a wrongful discharge action brought under the Employee Retirement Income Security Act of 1974 ("ERISA"), as amended, 29 U.S.C. § 1001 *et seq.* Plaintiff, James Andrews, also claims that defendant, Jones Truck Lines, wrongfully discharged him on the basis of a physical handicap, and that defendant made fraudulent misrepresentations concerning certain conditions of his employment. Plaintiff seeks both compensatory and punitive relief.

The matter now comes before the court on defendant's Motion For Summary Judgment (Doc. 41) and plaintiff's opposition to defendant's motion (Doc. 80). The matter has been fully briefed, and the court is now prepared to rule. For the reasons set forth more fully below, defendant's motion is granted.

The facts material to the resolution of defendant's motion for summary judgment are as follows. Plaintiff, James Andrews, was employed by defendant, Jones Truck Lines, from September 9, 1980, to September 2, 1986. Prior to gaining employment with defendant, plaintiff had been terminated from the two previous jobs that he had held in the trucking industry. During his pre-employment interview with defendant's former president, John Karlberg, and its operations vice president, Ivan Crook, plaintiff asked to be informed if his performance failed to live up to the company's expectations. Karlberg and Crook assured plaintiff that they would tell him if he did not meet their expectations.

Plaintiff's first job assignment with defendant was that of terminal manager. Plaintiff held the terminal manager's job in Kansas City, Kansas, for approximately one year. Plaintiff then assumed the position of regional sales manager. The day after plaintiff accepted the job as regional sales manager, he asked Ivan Crook what would happen if things did not go well. Ivan Crook assured plaintiff that he would find him a position in the operations division if things did not work out.

As regional sales manager, plaintiff was

responsible for the quantity and quality [1] of revenue for his region. Plaintiff's region encompassed Colorado, Kansas, Missouri and Nebraska. Plaintiff also exercised direct supervisory control over salespersons at the Kansas City terminal. One of the ways that plaintiff's performance as regional sales manager was monitored was through revenue reports which were issued every four weeks. In defendant's business, the ultimate concern is generating revenue and quality revenue.

In early 1986, Karlberg told the regional sales managers that he wanted an increase in profits and that they would have to work very hard to increase quality revenue. Plaintiff was aware, at that time, that defendant emphasized the outbound revenue categories on revenue reports because the company believed that "your outbound is somebody else's inbound." Plaintiff was told specifically that defendant considered outbound revenues as one of the most important areas of concern.

In 1986 both the Omaha and Denver terminals in plaintiff's region had trouble generating revenue. Plaintiff had discussions with his supervisors concerning improving the Denver and Omaha revenue areas, but he was never told that his "job was on the line." In 1986 plaintiff's sales region showed a negative percentage improvement in outbound revenues when compared with the same time frame in 1985. Plaintiff's region was one of only two regions of six in his division that exhibited negative revenue growth.

Early in 1986 doctors surgically removed a tumor from plaintiff's knee. A biopsy was performed, and it was determined that the tumor was cancerous. The original incision was allowed to heal, and the remaining cancer was surgically removed. Plaintiff received internal radiation treatment for two days. This was followed with twenty-five external radiation treatments over a five week period. At that time defendant maintained a self-insured group health insurance policy for its non-union workers. Plaintiff was a non-union worker.

In September, 1986, Hal Riney, plaintiff's immediate supervisor, informed plaintiff that he was being terminated. Riney, testified, in his deposition, that he did not terminate plaintiff because of any physical condition, or because plaintiff would or would not obtain certain benefits. He testified that he terminated plaintiff because of lack of sales revenue in his region.

Plaintiff then informed Ivan Crook of his termination. Crook, at that point, could not offer plaintiff a position in operations. Crook, however, promised plaintiff that defendant would insure him until he found another job. Defendant did, in fact, insure plaintiff until he found another job two weeks later. Defendant, as stated above, was self-insured in 1986, and had paid $16,-806.56 for plaintiff's medical bills.

Two weeks after his termination plaintiff was hired by Yellow Freight Systems, Inc. In plaintiff's personnel file maintained by Yellow Freight in its ordinary course of business, concerning his medical history, plaintiff stated that he was not "suffering from any other disease" or "permanent defect from illness, disease or injury." He has further stated, concerning the cancer and his present job, that in his new job he "can perform [his] duties." Plaintiff is, at the present time, routinely examined twice a year in conjunction with monitoring his cancer.

On June 20, 1988, the Kansas Commission on Civil Rights informed plaintiff that his complaint based upon handicap and age discrimination had been investigated and reviewed. The Commission issued a no probable cause determination. Plaintiff, thereafter, filed this action.

In his Answer to Interrogatory No. 1, plaintiff sets forth the factual basis of this case as follows:

> At the time plaintiff was discharged he was performing his duties as a regional sales manager for defendant in a competent and acceptable manner. He had not been reprimanded or warned that his job was in danger. His profit sharing had never been penalized. Beginning in Feb-

---

**1.** Quality revenue means revenue per shipment.

ruary, 1986, plaintiff was under treatment for liposarcoma involving his right thigh. A large portion of the cost of plaintiff's treatment was paid for by defendant's employee medical benefits plan. Plaintiff was no longer entitled to these medical benefits after he was discharged. Plaintiff also lost all rights to his retirement plan with defendant when he was discharged.

Plaintiff, in his deposition, also testified that he had four more years until he became vested under defendant's pension plan.

The court is familiar with the standards governing the consideration of a motion for summary judgment. Summary judgment shall be granted if the documentary evidence of the case "show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. This burden may be discharged by "showing," that is, pointing out to the district court, that there is an absence of evidence to support the nonmoving party's case. *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 2553–54, 91 L.Ed.2d 265 (1986). Once the moving party has properly supported its motion for summary judgment, "a party opposing ... may not rest on mere allegations or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 256, 106 S.Ct. 2505, 2514, 91 L.Ed.2d 202 (1986). Thus, the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment. *Id.* The court reviews the evidence on summary judgment under the substantive law and based on the evidentiary burden the party will face at trial on the particular claim. *Id.* at 254, 106 S.Ct. at 2513.

In his First Amended Complaint, plaintiff brings this action in six counts. Count I alleges that plaintiff was terminated in violation of § 510 ERISA, 29 U.S.C. § 1140.

Count II alleges that plaintiff was discharged because of a physical handicap in violation of the Kansas Acts Against Discrimination ("KAAD"), K.S.A. 44–1001 *et seq.* Count III alleges additional damages for the same cause of action alleged in Count II. Count IV alleges that plaintiff was discharged in violation of Kansas public policy pursuant to K.S.A. 44–1009. Count V alleges a claim for fraudulent misrepresentation. Finally, Count VI is a claim for punitive damages.

In Count I of his First Amended Complaint, plaintiff alleges that he was terminated in violation of § 510 ERISA, 29 U.S.C. § 1140, which provides, in part, that it is unlawful "for any person to discharge, fine, suspend, expel, discipline, or discriminate against a participant or beneficiary for exercising any right to which he is entitled under the provisions of the employee benefit plan ... or for the purpose of interfering with the attainment of any right to which such participant may become entitled under the plan ..." Plaintiff claims that defendant terminated him to avoid or preclude his attainment of employee benefits.

In its motion for summary judgment, Defendant contends that plaintiff's claim is mere speculation and conjecture, and that plaintiff cannot demonstrate any evidence supporting the allegation that his discharge was motivated by any desire of defendant to avoid or preclude his attainment of employee benefits. We agree.

Under § 510 ERISA no cause of action lies where the loss of pension benefits is a mere consequence of, but not a motivating factor behind, a termination of employment. *Economu v. Borg–Warner Corp.,* 662 F.Supp. 1047 (D.Conn.1986). Plaintiff, therefore, must establish that Defendant terminated him with the "specific intent" to interfere with his rights under the benefit plan. *Nixon v. Celotex Corporation,* 693 F.Supp. 547, 555 (W.D.Mich. 1988). In *Nixon,* the district court stated that:

> In order to survive defendant's motion for summary judgment, plaintiff must

come forward with evidence from which a reasonable jury could find that defendant's desire to avoid pension liability was a determining factor in plaintiff's discharge.

*Id.*, 693 F.Supp. at 555.

■ We conclude, from a review of the record, that the uncontroverted facts fail to raise an inference from which a reasonable jury could find that plaintiff's termination was motivated by defendant's desire to avoid or preclude the payment of employee benefits. It is uncontroverted that plaintiff had another four years before he was vested in the employee benefit plan. Hal Riney, plaintiff's supervisor, testified under oath that it "never entered his mind" to terminate plaintiff based on his physical condition or possible attainment of pension benefits. Furthermore, defendant insured plaintiff after his termination until he found other employment. The evidence clearly points to the conclusion that plaintiff was terminated as a result of his performance rather than as a result of any desire of defendant to preclude plaintiff from attaining employee benefits. We agree, therefore, with defendant that plaintiff's claim with regard to Count I is pure speculation and conjecture. Plaintiff has failed to sustain his burden of showing a causal connection between the adverse job decision and a desire to avoid pension liability. *See Nixon*, 693 F.Supp. at 555. Summary judgment is therefore mandated as to Count I of plaintiff's First Amended Complaint.

Defendant next contends, in its motion, that plaintiff is not physically handicapped as defined in the Kansas Acts Against Discrimination ("KAAD"), K.S.A. 44–1001 *et seq.* The KAAD proscribes discrimination against the physically handicapped. Specifically, it is unlawful for an "employer because of the ... physical handicap ... of a person ... to discharge or otherwise discriminate against such a person ... in the terms, conditions or privileges of employment." K.S.A. 44–1009(a)(1). Plaintiff argues, to the contrary, that because of his previous cancerous condition that he is handicapped as defined by the KAAD.

■ To assert a claim of discrimination based on a physical handicap under the KAAD, a plaintiff must satisfy the threshold burden that he has a "physical handicap" as defined by K.S.A. 44–1002(j). *Padilla v. City of Topeka*, 238 Kan. 218, 227, 708 P.2d 543 (1985). K.S.A. 44–1002(j) provides:

> The term "physical handicap" means the physical condition of a person, whether congenital or acquired by accident, injury or disease which constitutes a substantial disability, but is unrelated to such person's ability to engage in a particular job or occupation.

The court in *Padilla* concluded that, although phrased differently, the meaning of "physical handicap" as set forth in the KAAD is similar to the definition of that term in the Rehabilitation Act of 1973, 29 U.S.C. § 706(7)(B)(i). *Id.*, 238 Kan. at 228, 708 P.2d 543. The *Padilla* court stated that "[a] physical impairment does not automatically equate to a handicap under either act—less than perfect is not the definition of handicap under either statute. The handicap must be a substantial disability unrelated to the ability to engage in a particular job or activity, or a physical impairment which substantially limits one or more of such person's major life activities." *Id.* 238 Kan. at 228, 708 P.2d 543.

In *Padilla* the Kansas Supreme Court relied heavily on a Sixth Circuit case, *Jasany v. United States Postal Service*, 755 F.2d 1244 (6th Cir.1985). In that case, Jasany was a postal worker who was hired to operate a mail sorting machine. Jasany had a mild case of strabismus (crossed eyes) which had never limited any of his life's activities. However, the condition precluded work on the mail sorting machine. Jasany was terminated for inability to perform the work for which he was hired. He then brought an action against his former employer alleging a violation of the federal Rehabilitation Act of 1973, 29 U.S.C. § 701, *et seq.*

In denying relief under the Act, the Sixth Circuit reasoned that to assert a claim that he was discriminated against on the basis of a physical handicap, Jasany had to show,

at the threshold, that he was handicapped pursuant to 29 U.S.C. § 706(7)(B)(i). 29 U.S.C. § 706(7)(B)(i) provides: a handicapped person is one who "has a physical or mental impairment which substantially limits one or more of such person's major life activities." The Court then noted that "major life activities" is defined in 29 C.F.R. § 1613.702(c) as "functions, such as caring for one's self, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." *Id.,* 755 F.2d at 1248. The Court also noted a number of factors relevant to determining whether an impairment was a substantial disability which limited an individual's employment potential—"the number and type of jobs from which the impaired individual is disqualified, the geographical area to which the individual has reasonable access, and the individual's job expectations and training." *Id.,* 755 F.2d at 1249; *see, also E.E. Black, Ltd. v. Marshall,* 497 F.Supp. 1088 (D. Hawaii 1980). The Court finally noted that, in light of the above framework, the burden is on the plaintiff to establish the existence of an impairment that substantially limits a major life activity as an element of plaintiff's *prima facie* case. *Id.*

The whole thrust of plaintiff's evidence now before us is that he is not a handicapped person. He has stated that despite his cancer that he can perform his present duties at Yellow Freight Systems, Inc. He has stated that he is not suffering from any serious illness or disability. He has not proffered any evidence that his cancerous condition has in any way substantially limited any of his life's activities. We conclude that the rationale in *Jasany* and *Padilla* is applicable to this case. Plaintiff, despite the serious nature of cancer, fails to meet the threshold requirement that he is handicapped as defined by 29 U.S.C. § 706(7)(B)(i) and K.S.A. 44–1002(j). There is simply no evidence that plaintiff has a "physical impairment which substantially limits one or more of [his] major life activities." For that reason we must grant defendant's motion for summary judgment as it relates to Counts II, III and IV of plaintiff's First Amended Complaint. Since we have disposed of these claims on the merits it is unnecessary to consider defendant's assertion that they are preempted by § 514(a) ERISA, 29 U.S.C. § 1144(a).

The final dispute concerns plaintiff's claim of fraudulent misrepresentation. Plaintiff's claim in this regard is two-fold. First, he alleges that he was told during a pre-employment interview in September, 1980, by John Karlberg and Ivan Crook that if Jones Truck Lines was not satisfied with his job performance that "he would be told of the unacceptable performance and given an opportunity to correct or improve his performance before he would be terminated. Plaintiff requested that this be a condition of his employment and was told it would be." Second, he alleges that in early 1982 "Ivan Crook told plaintiff that if he was not happy with being regional sales manager or the company was not satisfied with plaintiff's performance, then plaintiff could be transferred to a position in operations." Plaintiff was then terminated in 1986 without forewarning.

Defendant contends that these promises were not fraudulent misrepresentations, nor were they inducements detrimentally relied upon by plaintiff in accepting employment. Therefore, defendant asserts that plaintiff's claim is insufficient under the laws of this state. We agree.

Under Kansas law, fraud is never presumed and must be proven by clear and convincing evidence. *Nordstrom v. Miller,* 227 Kan. 59, 65, 605 P.2d 545 (1980). In *Goff v. American Savings Association,* 1 Kan.App.2d 75, 561 P.2d 897 (1977), the Kansas Court of Appeals noted that a statement alleged to be a misrepresentation "must have been of such a nature that it was reasonably calculated to deceive the [plaintiffs] and induce them to do what they otherwise would not have done." *Id.* at 78, 605 P.2d 545.

We agree with defendant that, under the standard articulated in *Goff,* its vague promises did not induce plaintiff to do something that he otherwise would not have done. In our view, it is highly unlikely that plaintiff would have rejected a posi-

tion with defendant if defendant had refused to promise to tell him that he was not performing properly before terminating him. We also agree with defendant that plaintiff's allegations do not present the type of clear and convincing evidence needed to support a claim for fraudulent misrepresentation. At best, the conversations, as they appear in the factual record, reflect nothing more than a hopeful expression of a future unilateral expectation, not a promise upon which reasonable reliance can exist. Therefore, defendant's motion for summary judgment is granted as it relates to Count V of plaintiff's First Amended Complaint. Since we have disposed of this claim on the merits it is unnecessary to consider defendant's assertion that it is preempted by § 514(a) ERISA, 29 U.S.C. § 1144(a).

In Count VI of his First Amended Complaint plaintiff prays for punitive damages. It is clear that punitive damages are not allowed in ERISA actions. *Sage v. Automation, Inc. Pension Plan and Trust*, 845 F.2d 885, 888 (10th Cir.1988).

IT IS, THEREFORE, BY THE COURT ORDERED that defendant's motion for summary judgment is granted.

IT IS SO ORDERED.